**EDDIE'S LEAF SPRING SHOP AND TOWING LLC, Plaintiff–Appellant.**

v.

**COLORADO PUBLIC UTILITIES COMMISSION OF the STATE of Colorado, Defendant–Appellee.**

No. 08SA359.

Supreme Court of Colorado, En Banc.

Oct. 13, 2009.

Harvey V. Mabis, Appearing Pro Se on behalf of Eddie's Leaf Spring Shop and Towing LLC, Fort Collins, Colorado.

John W. Suthers, Attorney General, Mariya Barmak, Assistant Attorney General, Public Officials/PUC Unit, State Services Section, Denver, Colorado, Attorneys for Defendants–Appellees.

Justice BENDER delivered the Opinion of the Court.

## I. Introduction

Eddie's Leaf Spring Shop and Towing LLC ("Eddie's Towing"), challenges a Civil Penalty Assessment Notice for failure to provide records to the Public Utilities Commission ("PUC"). An Administrative Law Judge ("ALJ") allowed Harvey V. Mabis, the owner's brother, to proceed pro se on behalf of Eddie's Towing. The district court upheld the fine assessed to Eddie's Towing. Pursuant to C.A.R. 3(b) and section 40–6–115(5),

C.R.S. (2009), Eddie's Towing seeks direct appellate review from this court of the civil penalty that the PUC assessed.

Eddie's Towing claims that 49 U.S.C. § 14501(c) (2006) preempts PUC regulations concerning towing carriers. Additionally, Eddie's Towing contends that the PUC rule authorizing a civil penalty for failure to provide records constitutes a warrantless search in violation of the U.S. and Colorado Constitutions. Eddie's Towing also makes other arguments that we address in this opinion. We hold that 49 U.S.C. § 14501(c) does not preempt the state from regulating towing carriers conducting non-consensual tows. We also hold that the regulation authorizing records requests is not a warrantless search in violation of the U.S. and Colorado Constitutions. In addition, we find no merit to Eddie's Towing's other arguments. Hence, we affirm the district court's order upholding the civil penalty and remand this case to the district court with instructions that it return the case to the PUC for proceedings consistent with this opinion.

## II. Facts and Proceedings Below

Eddie's Towing operates as a towing carrier and has obtained a permit from the PUC. *See* § 40–13–106, C.R.S. (2009). On August 19, 2006, Harvey Mabis, acting on behalf of Eddie's Towing, towed James Rice's car without his consent. Rice filed a complaint with the PUC alleging that Eddie's Towing refused a timely release of his car and personal belongings, including his wife's insulin medication. The PUC initiated an investigation into the alleged complaint.

Pursuant to PUC regulations, a towing carrier must be available to release or provide access to a towed motor vehicle during the first forty-eight hours of storage if the owner makes a proper request. Rule 6507(d)(I)(A), 4 Colo.Code Regs. § 723–6 (2006) (subsequently amended and recodified at Rule 6512).[1] In addition, a towing carrier must complete a tow record/invoice for all non-consensual tows. Rule 6509(a). Towing carriers must make towing authorizations

---

1. Unless otherwise noted, references to the PUC rules and regulations, under 4 Colo.Code Regs. section 723–6 (2009), are referred to by their rule numbers (e.g., Rule 6005).

available to PUC enforcement officials upon request and produce other business records within two to ten days of a PUC request. Rule 6005(c).

From January 26, 2007, until March 1, 2007, a lead investigator from the PUC made numerous requests to obtain the towing records from Eddie's Towing. Eddie's Towing responded to the lead investigator's correspondence by asking for his credentials and the basis of the complaint. A different employee of the PUC, whom Mabis had known for twenty years, left a voicemail with Mabis verifying the credentials of the lead investigator. On March 1, 2007, the lead investigator sent a final letter to Eddie's Towing asking for records related to Rice's complaint. The lead investigator sought a copy of the tow record/invoice, the name and telephone number of the person who authorized the initial tow and a statement from Eddie's Towing explaining its refusal to release Rice's vehicle. Eddie's Towing again refused to turn over the records, asking for the credentials of the lead investigator and making various allegations that the PUC had "no probable cause" or authority to ask for records.

The PUC fined Eddie's Towing for one violation of failure to release a vehicle from storage, pursuant to Rule 6507(d)(I)(A) (2006), and ten violations of failure to provide records (one for each day from March 12 until March 23), pursuant to Rule 6005(c). To expedite the proceedings before the ALJ, the PUC dismissed the violation for failure to release the vehicle. The ALJ recommended that the PUC assess a fine to Eddie's Towing totaling $2,750 for failure to provide its towing records, and the PUC accepted this recommendation.[2] On appeal, the district court upheld the PUC's findings and its assessment of a civil penalty.

### III. Standard of Review

By statute, the scope of judicial review of a PUC order is limited to:

whether the [PUC] has regularly pursued its authority, including a determination of whether the decision under review violates any right of the petitioner under the constitution of the United States or of the State of Colorado, and whether the decision of the [PUC] is just and reasonable and whether its conclusions are in accordance with the evidence.

§ 40–6–115(3), C.R.S. (2009); *Trans Shuttle, Inc. v. Pub. Utils. Comm'n,* 89 P.3d 398, 403 (Colo.2004).

■■■ Courts reviewing a PUC decision determine questions of law de novo and are not bound by the PUC's rulings on legal issues. § 40–6–115(2), (3); *Colo. Office of Consumer Counsel v. Pub. Utils. Comm'n,* 42 P.3d 23, 26 (Colo.2002). Nevertheless, the PUC is the agency charged with administration of the public utilities laws, and thus, the courts should defer to the PUC's interpretation of the public utilities statutes and regulations. *Powell v. Colo. Pub. Utils. Comm'n,* 956 P.2d 608, 613 (Colo.1998). A rule adopted pursuant to a statutory rule-making proceeding is presumed to be valid, and the burden is upon the challenging party "to demonstrate that the rule-making body acted in an unconstitutional manner, exceeded its statutory authority, or otherwise acted in a manner contrary to statutory requirements." *City of Aurora v. Pub. Utils. Comm'n,* 785 P.2d 1280, 1287 (Colo.1990) (quoting *Regular Route Common Carrier Conference v. Pub. Utils. Comm'n,* 761 P.2d 737, 743 (Colo. 1988)). In reviewing factual issues, a court may not overturn the PUC's findings of fact if they are supported by substantial evidence in the record. *Powell,* 956 P.2d at 613.

### IV. Analysis

#### A. Preemption

■■ Eddie's Towing contends that 49 U.S.C. § 14501(c) (2006), which prohibits a state from enacting laws related to a price,

---

**2.** Commissioner Carl Miller would have granted a rehearing because he "questioned why staff waited over five months before they chose to act on an alleged violation [and was] troubled by the fact that staff provided no reason or justification for the long delay." *Colo. Pub. Utils. Comm'n v.*

*Eddie's Leaf Spring Shop & Towing, LLC,* No. C07–0914, slip op. at 8–9 (Colo.P.U.C. Oct.24, 2007), http://www.dora.state.co.us/puc/dockets decisions/decisions/2007/C07–0914_07G–079T0. doc. (Miller, Comm'r, dissenting).

route or service of a motor carrier, preempts state regulation of towing carriers conducting non-consensual tows.

 It is well settled that a state law that conflicts with federal law is without effect. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). A federal statute may preempt state action based on express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541, 121 S.Ct. 2404, 150 L.Ed.2d 532 (2001) (citations omitted).

Eddie's Towing cites the general rule of 49 U.S.C. § 14501(c) to support the proposition that a state may not enact laws or regulations related to a price, route or service of any motor carrier:

> Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier … or any motor private carrier, broker, or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1). Under this provision, Eddie's Towing argues that the State of Colorado cannot regulate towing carriers.

The statute contains two exceptions to this general rule: one pertaining to the state's safety regulatory authority, 49 U.S.C. § 14501(c)(2)(A), and another pertaining to the state's ability to require prior written authorization for nonconsensual tows, 49 U.S.C. § 14501(c)(5). With respect to the first exception, the statute preserves the state's ability to enact legislation regarding safety regulatory authority: "paragraph (1) … shall not restrict the safety regulatory authority of a State with respect to motor vehicles." 49 U.S.C. § 14501(c)(2)(A); *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 442, 122 S.Ct. 2226, 153 L.Ed.2d 430 (2002). Although the Tenth Circuit has not addressed the scope of this

exception, other circuits' interpretations are instructive. In *Tillison v. Gregoire*, 424 F.3d 1093, 1096 (9th Cir.2005), the Ninth Circuit considered a Washington statute that required the person or public official requesting the impound to provide a signed authorization to the tow truck operator before the operator could proceed with the impound. The court concluded that it was reasonable that the Washington State Legislature had public safety in mind when it enacted the statute, and thus, the statute fell within the exception. *Id.* at 1103. Other circuits have also interpreted this exception broadly to permit regulation of towing carriers when the rules are genuinely responsive to public safety concerns. *VRC LLC v. City of Dallas*, 460 F.3d 607, 615 (5th Cir.2006); *Galactic Towing v. City of Miami Beach*, 341 F.3d 1249, 1252 (11th Cir.2003).

Under the second exception, states retain the authority to require that a person towing a motor vehicle from private property have prior written authorization. The statute provides:

> Nothing in this section shall be construed to prevent a State from requiring that, in the case of a motor vehicle to be towed from private property without the consent of the owner or operator of the vehicle, the person towing the vehicle have prior written authorization from the property owner or lessee (or an employee or agent thereof) or that such owner or lessee (or an employee or agent thereof) be present at the time the vehicle is towed from the property, or both.

49 U.S.C § 14501(c)(5).

In evaluating whether these two exceptions apply, we note that the General Assembly has delegated to the PUC the duty to prescribe reasonable rules and regulations setting "the circumstances under which a towing carrier may tow a motor vehicle without the express consent of the owner." § 40–13–107(1)(d), C.R.S. (2009). The PUC has explicitly addressed the "safety regulatory authority" exception in the course of its rulemaking duties. Interpreting its authority under the statute and considering *Ours Garage*, the PUC found that "the Commission

rules that pertain to towing carriers fall within the safety exception and are not preempted by § 14501(c)." PUC Decision No. C09–0463, slip op. at 7–8 (Apr. 29, 2009), *http://www.dora.state.co.us/puc/docketsdecisions/decisions/2009/C09–0463_08R–478TR.pdf.*

Given the deference accorded to the PUC and the lack of evidence or authority to the contrary, we have no basis to conclude that the PUC's opinion, which determined that its rulemaking authority falls within the safety regulatory authority exception, is erroneous. The PUC's regulations are responsive to safety concerns. Colorado motorists must have assurance that their vehicles will not be towed at the whim of a towing carrier, that they will not be stranded and that they can promptly recover their vehicles and possessions after paying a fee. Rice's complaint exemplifies how the PUC's regulation of towing carriers implicates its safety regulatory authority. Rice's inability to retrieve his car and belongings in a timely manner left his wife temporarily without her diabetic medication.

Under the second exception, 49 U.S.C § 14501(c)(5), states may obligate towing carriers to have prior written authorization before they conduct non-consensual tows. Consistent with this mandate, the PUC's regulations require that towing carriers in Colorado receive prior written authorization before engaging in non-consensual towing, Rule 6508(b), and that the towing carrier produce documentation of this authorization, Rule 6005(c). Hence, we hold that the PUC's regulations fall within these two exceptions and that 49 U.S.C. § 14501(c)(1) does not preempt the PUC's regulations.

## B. Administrative Searches

■ Eddie's Towing contends that Rule 6005(c), which requires towing carriers to release records upon request by an enforcement official or within two days of a request related to a complaint, permits a warrantless search that violates the United States and Colorado Constitutions.

■ Although a person has the right to be free from unreasonable searches and seizures, the expectation of privacy in commercial premises is different from, and indeed less than, a similar expectation in an individual's home. *New York v. Burger,* 482 U.S. 691, 700, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987). This expectation is particularly attenuated when the commercial property owner operates in a "closely regulated industry." *Id.* According to *Burger,* a warrantless inspection made pursuant to a regulatory scheme of a closely regulated industry is reasonable if three requirements are met: (1) the regulatory scheme must be informed by a substantial government interest; (2) the warrantless inspections must be necessary to further the regulatory scheme; and (3) the inspection program must provide a "constitutionally adequate substitute" for a warrant in terms of the certainty and regularity of the program's application. *Id.* at 702–03, 107 S.Ct. 2636.

■ The key factors in determining whether an industry is closely regulated are the pervasiveness and regularity of the regulation and the effect of such regulation upon an owner's expectation of privacy. *Id.* at 701, 107 S.Ct. 2636. The Tenth Circuit has held that closely regulated industries include the auto salvage business, *U.S. v. Johnson,* 408 F.3d 1313, 1320 (10th Cir.2005), and the commercial trucking industry, *U.S. v. Mitchell,* 518 F.3d 740, 751 (10th Cir.2008). Our research reveals that only one court has specifically addressed whether the towing industry is a closely regulated industry. *People v. Velez,* 109 Misc.2d 853, 441 N.Y.S.2d 176, 181 (N.Y.Crim.Ct.1981). That court concluded that the tow truck industry is a closely regulated industry based on the depth of the state's regulations. *Id.*

Similar to the court in *Burger,* we evaluate the pervasiveness and regularity of the regulation and the effect of such regulation upon an owner's expectation of privacy to determine whether an industry is closely regulated. 482 U.S. at 701, 107 S.Ct. 2636. The PUC has a statutory obligation to set regulations for the public identification of towing vehicles, the facilities for storage of towed vehicles, the responsibilities of a towing carrier and the circumstances under which a towing carrier may tow a vehicle. § 40–13–107(1), C.R.S. (2009). In addition, the com-

mission may set the maximum and minimum rates for non-consensual tows. § 40–13–107(2). The PUC regulations require that towing carriers keep detailed records of tows. Rule 6509. Towing carriers that do not comply with the statutes or PUC regulations are subject to civil penalties, as listed in Rule 6514, and the suspension or revocation of their permits. § 40–13–109. Moreover, a towing carrier has little expectation of privacy considering that a condition for obtaining a license is to make its records, facilities and towing vehicles available for inspection. Rules 6005(c), 6513. These extensive regulations persuade us that non-consensual towing is a closely regulated industry. As an additional consideration, nonconsensual towing is similar to other industries involving motor vehicles that the Tenth Circuit has determined to be closely regulated. *See Johnson,* 408 F.3d at 1320; *Mitchell,* 518 F.3d at 751.

Next, we consider whether the PUC's regulatory scheme satisfies the three *Burger* criteria necessary to make reasonable warrantless inspections. First, the state has a substantial government interest in protecting the public from the unauthorized taking of valuable personal property. The Colorado General Assembly has explicitly declared that: "the commission shall issue a permit to a towing carrier and may attach to such permit ... such restrictions, terms and conditions ... as are reasonably deemed necessary for the protection of the property of the public." § 40–13–106. Second, warrantless inspections are necessary to further the regulatory scheme. To respond promptly to stranded motorists and to protect their vehicles and personal property, the PUC enforcement personnel must have immediate access to information from carriers about who authorized the tow and where the vehicle is stored. Third, the PUC's inspection program provides a constitutionally adequate substitute for a warrant in terms of the certainty and regularity of its application.

The PUC rules set clear bounds for when towing carriers must respond to records requests. Under Rule 6005(c), entities providing transportation by motor vehicle must furnish time-sensitive documents (including towing authorizations) upon demand, while they must provide other, less urgent business records within two to ten days after the request.[3] Based on the regulatory scheme, the towing carrier is necessarily aware that it must always carry towing authorizations when it takes possession of another's valuable property. *See Exotic Coins, Inc. v. Beacom,* 699 P.2d 930, 942 (Colo.1985) (holding that an act, which required purchasers of valuable articles to maintain a register and to make weekly reports on the register's contents, made the buyer "necessarily aware" that the register of transactions will be subject to periodic inspections). Thus, we conclude that non-consensual towing is a closely regulated industry and that the state's regulations meet the requirements of a reasonable and constitutional warrantless administrative search.

Eddie's Towing asserts that article II, section 7 of the Colorado Constitution (Colorado's version of the Fourth Amendment) provides greater rights than the U.S. Constitution.

The Colorado and U.S. Constitutions are generally coextensive with regard to warrantless searches and seizures. *See People v. Rodriguez,* 945 P.2d 1351, 1358–59 (Colo. 1997). Nevertheless, we have held that the Colorado Constitution provides a greater reasonable expectation of privacy than the U.S. Constitution in the following: commercially produced items, *People v. Oates,* 698 P.2d 811, 818 (Colo.1985); telephone toll records, *People v. Corr,* 682 P.2d 20, 27 (Colo. 1984); telephone pen registers, *People v. Sporleder,* 666 P.2d 135, 139–40 (Colo.1983); and bank records, *Charnes v. DiGiacomo,*

---

**3.** Rule 6005(c) provides that:

Upon receipt of a records request by an enforcement official, except as otherwise required by these rules or an order of the Commission, the records must be made available to such enforcement official pursuant to the following timelines:

(I) Immediately for any records required to be maintained in a motor vehicle or with the driver, towing authorizations, household goods mover contracts for service, or any records related to insurance or safety;
(II) Within two days for any records related to a complaint investigation; or
(III) Within ten days for all other records.

200 Colo. 94, 98–100, 612 P.2d 1117, 1119–21 (1980).

When comparing the two constitutional provisions concerning search and seizure, we have observed that the Fourth Amendment only requires that a warrant be issued on the basis of probable cause supported by oath or affirmation, whereas article II, section 7 additionally requires that the oath or affirmation be reduced to writing. *People v. Baird,* 172 Colo. 112, 116, 470 P.2d 20, 22 (1970). To the extent that Eddie's Towing relies on this distinction, the difference in wording refers to the warrant requirement, which is not applicable to reasonable *warrantless* searches under *Burger.* Additionally, our precedent provides no basis to distinguish between the rights under the U.S. and the Colorado Constitutions with regard to administrative searches. This court addressed whether there was any difference between the U.S. and Colorado Constitutions in *Exotic Coins, Inc.,* and we held that there was "no reason to reach a different result … under the Colorado Constitution than that reached under the United States Constitution." 699 P.2d at 943.

Therefore, we conclude that the PUC has violated neither the Fourth Amendment nor article II, section 7 of the Colorado Constitution.

### C. Rulemaking Authority

■ Eddie's Towing argues that the PUC exceeded its power granted by statute when it enacted Rule 6005(c).

The PUC has broad authority to set reasonable regulations to carry out its obligations under law. In particular, the PUC has the duty to prescribe

> reasonable rules and regulations covering the operations of towing carriers *as may be necessary for the effective administration of this article,* which shall include … (d) The circumstances under which a towing carrier may tow a motor vehicle without the express consent of the owner thereof.

§ 40-13-107(1), C.R.S. (2009) (emphasis added).

Under this authority, the PUC requires authorization from a law enforcement official, the owner of a vehicle or the property owner. Rule 6508(b). To enforce this regulation, the PUC mandates that towing carriers keep invoices and records with specific information about each tow. Rule 6509(a). The PUC regulations require towing carriers to make available their records according to certain timelines: immediately for towing authorizations, within two days for any records related to a complaint investigation and within ten days for all other records. Rule 6005(c). The agency has determined that written authorizations for non-consensual tows are high priority, and thus, towing carriers must produce them at the agency's request. This policy is similar to asking a driver to produce immediately certain motor vehicle records and proof of insurance. *See id.* We defer to the PUC as the primary authority to determine what documentation is proper and when compliance is necessary for prompt enforcement of its regulations. On the record, there are no facts to support the claim that a request for documentation following a complaint is unreasonable or unnecessary. As a practical matter, the PUC would be hard-pressed to enforce its obligations to protect the public from unauthorized tows if it had no power to request accurate records in a timely fashion. Therefore, we hold that Rule 6005(c), as it is written, is reasonable and necessary for the effective administration of the PUC's obligations.

### D. Investigations Based on Informal Complaints

■ Eddie's Towing contends that the PUC could not request documents or initiate an investigation because the underlying complaint was informal. The PUC, however, has broad investigatory powers authorizing it to conduct an investigation without the formality of a written complaint. *See Colo. Energy Advocacy Office v. Pub. Serv. Co. of Colo.,* 704 P.2d 298, 304 (Colo.1985).

■ An administrative agency's authority to request records and undertake other investigatory functions is broad. *Santa Fe Energy Prods. Co. v. McCutcheon,* 90 F.3d 409, 414 (10th Cir.1996). If a statute

delegates investigative and accusatory duties to an administrative body, then that agency may take steps to gather information as to probable violations of the law. *United States v. Morton Salt Co.*, 338 U.S. 632, 642–43, 70 S.Ct. 357, 94 L.Ed. 401 (1950) (upholding the FTC's request for a salt producer's reports because the agency could "investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not."). A government investigation into corporate matters is sufficient if the inquiry is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant. *Id.* at 652, 70 S.Ct. 357.

The General Assembly and our precedent concerning the PUC recognize the agency's broad investigative powers. Under section 40–2–104(1), C.R.S. (2009), the director of the commission "may appoint such . . . investigative personnel . . . as are necessary to carry out the provisions of this title or to perform the duties and exercise the powers conferred by law upon the commission." Furthermore, the investigative personnel of the commission "shall have the authority to issue civil penalty assessments for the violations enumerated in sections 40–7–113 and 40–7–114." § 40–7–116(1). This court has recognized the broad investigatory powers of the PUC in the context of setting gas cost tariffs. *Colo. Energy Advocacy Office*, 704 P.2d at 304. In that case we held that "the PUC may rely on evidence other than that obtained at a formal hearing, thus allowing the PUC to consider a broader range of information in making an adjudicatory decision than that allowed by strict application of the [Administrative Procedure Act]." *Id.* Thus, the PUC was acting within its investigatory powers when it initiated an investigation upon an informal complaint.

Furthermore, the PUC's request for records was not indefinite and the information sought was relevant. The lead investigator requested three documents necessary to determine whether Mr. Rice's allegation was meritorious: a copy of the tow record/invoice, the name and telephone number of the person who authorized the initial tow and a statement from Eddie's Towing explaining its refusal to release Rice's vehicle. These are precise requests and relevant to determining whether an unauthorized tow had occurred. Thus, there exists no basis to conclude that the agency acted improperly.

## E. Agency Discretion

▮ Lastly, Eddie's Towing argues that the PUC abused its discretion by dismissing the charge of failure to release a towed vehicle but proceeding on the charges for failure to release records.

▮ Courts accord great deference to the PUC's choice in pursuing alleged violations because the commission has special expertise in public utility regulation. *See Archibold v. Pub. Utils. Comm'n*, 58 P.3d 1031, 1037 (Colo.2002) (upholding the PUC's decision not to seek civil fines against a telecommunications company because the court "accord[s] great deference to the PUC's remedy choice because the commission has special expertise in public utility regulation and its choice of remedy resides at the core of its responsibility and discretion" (citation omitted)). The PUC's discretion to assess a civil penalty is similar to a prosecutor's discretion in criminal cases, and this court typically refrains from ordering the executive branch to take an action committed to prosecutorial discretion. *Id.* at 1039. Courts will uphold an agency sanction unless it (1) bears no relation to the conduct, (2) is manifestly excessive in relation to the needs of the public or (3) is otherwise a gross abuse of discretion. *Colo. Real Estate Comm'n v. Hanegan*, 947 P.2d 933, 936 (Colo.1997).

Failure to release a towed vehicle and failure to produce records are independent violations, and thus, the PUC could choose to pursue all, some or none of those violations within its sound discretion. The record shows that the PUC dismissed the charge for failure to release a vehicle to expedite the proceedings in front of the ALJ, ostensibly to conserve agency resources. It is uncontested that Eddie's Towing failed to produce the towing records after nearly two months of requests. Considering that the PUC made good faith attempts to secure compliance and limited its penalty assessment to only ten days' worth of violations instead of two

months' worth of potential violations, the penalty assessment here does not constitute an abuse of discretion.

## V. Conclusion

For the reasons stated above, we affirm the judgment of the district court upholding the PUC's findings and assessment of a civil penalty. We remand this case to the district court with instructions that it return the case to the PUC for proceedings consistent with this opinion.