The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

## 2018COA40

**No. 17CA0051, Maralex Res., Inc. v. Colo. Oil & Gas
Conservation Comm'n — Administrative Law — Oil and Gas
Conservation Act — Colorado Oil and Gas Conservation
Commission; Constitutional Law — Fourth Amendment —
Searches and Seizures — Administrative Searches**

In this appeal of an administrative agency order, a division of

the court of appeals considers whether the Colorado Oil and Gas

Conservation Commission (COGCC) can constitutionally subject oil

and gas locations to unannounced, warrantless inspections.  The

division concludes that a COGCC rule permitting warrantless

inspections of oil and gas locations does not violate the United

States or Colorado Constitution.  Because it authorizes searches

falling within the administrative search exception to the warrant

requirement, the COGCC rule is constitutional.  Further, the

division concludes that the inspection of the oil and gas locations at issue here did not violate the surface owners' constitutional rights.

The division also considers COGCC's findings that Maralex Resources, Inc., violated various agency rules at two oil and gas locations. The division concludes that one of COGCC's findings was arbitrary and capricious in one respect, but otherwise affirms the district court's order enforcing COGCC's order.

Accordingly, the division affirms in part, reverses in part, and remands with directions.

Court of Appeals No. 17CA0051
City and County of Denver District Court No. 14CV34759
Honorable John W. Madden, IV, Judge

Maralex Resources, Inc., a Colorado corporation; A.M. O'Hare; and Mary C. O'Hare,

Plaintiffs-Appellants,

v.

Colorado Oil and Gas Conservation Commission,

Defendant-Appellee.

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE TAUBMAN
Booras and Casebolt*, JJ., concur

Announced March 22, 2018

Abadie Schill, P.C., William E. Zimsky, Durango, Colorado, for Plaintiffs-Appellants

Cynthia H. Coffman, Attorney General, Jake Matter, Senior Assistant Attorney General, David A. Beckstrom, Assistant Attorney General, Denver, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1     In this appeal of an administrative agency decision, plaintiffs, Maralex Resources, Inc. (Maralex), A.M. O'Hare (O'Hare), and Mary C. O'Hare, appeal the district court's order affirming an order finding violation (OFV) issued by defendant, the Colorado Oil and Gas Conservation Commission (COGCC). On appeal, Maralex and the O'Hares contend that a COGCC rule permitting random, warrantless searches of oil and gas properties violates the United States and Colorado Constitutions. As a matter of first impression, we conclude that the COGCC rule is constitutional because it permits searches falling within the administrative search exception to the warrant requirement. To the extent the O'Hares separately challenge the constitutionality of the rule, we similarly reject their challenge.

¶ 2     Maralex also appeals the district court's order enforcing COGCC's findings that it violated several rules at two of its oil and gas locations. Because we agree with Maralex that one of COGCC's findings was arbitrary and capricious in one respect, we reverse the district court's order in part and affirm in part.

1

## I.  Background

### A.  Facts

¶ 3      In a prehearing statement submitted to the COGCC, the parties stipulated to the following facts.

¶ 4      O'Hare was the president of Maralex, a Colorado corporation licensed to conduct oil and gas operations in the state.  Maralex operated over 200 oil wells in Colorado.  As relevant here, Maralex was the operator of three producing wells in southwest Colorado — Katie Eileen 34-7-35 2A (Katie Eileen 2A), Katie Eileen 34-7-35 2 (Katie Eileen 2), and Katie Eileen 34-7-35 3 (Katie Eileen 3).[1]  The wells were located on the O'Hares' ranch, and the O'Hares owned both the surface and mineral rights, though they leased a mineral interest to Maralex beginning in 1995.

¶ 5      The wells were located on two separate oil and gas locations.[2] Katie Eileen 2A was located on a western location, while Katie Eileen 2 and 3 were located on an eastern location.  The Katie

---

[1] A COGCC rule defines operator as "any person who exercises the right to control the conduct of oil and gas operations."  Dep't of Nat. Res. Rule 100, 2 Code Colo. Regs. 404-1.

[2] A COGCC rule defines oil and gas location as "a definable area where an operator has disturbed or intends to disturb the land surface in order to locate an oil and gas facility."  *Id.*

Eileen 2 well was completed in 1996, and the Katie Eileen 3 well was completed in 2007.

¶ 6     Additionally, there were two pits on the eastern location adjacent to the Katie Eileen 2 and 3 wells.[3]  One pit was unlined, and the other had a partially torn liner.  The O'Hares used those pits as stock ponds for their cattle.

¶ 7     In the afternoon of March 20, 2014, a COGCC field inspection supervisor contacted a local Maralex office and requested access to the Katie Eileen wells to conduct a routine inspection.  Maralex employees informed the inspection supervisor that the properties were protected by locked gates and, because O'Hare was out of town, they could not permit access that day.  The inspection supervisor agreed to delay the inspection for a day, provided that Maralex contact him "oil-field early" — meaning, according to industry custom, at 6:00 a.m. — the next day.

¶ 8     At 9:30 a.m. the following morning, not having heard from Maralex, the inspection supervisor issued a notice of alleged

---

[3] A COGCC rule defines pit generally as "any natural or man-made depression in the ground used for oil or gas exploration or production purposes." *Id.*  The rule also lists various types of pits. *See id.*

violation based on Maralex's failure to provide access to the wells. There was no communication between Maralex and the inspection supervisor until mid-morning, when O'Hare called the inspection supervisor.

¶ 9 The exact content of the March 21 phone call was disputed, but the conversation was apparently heated and arguably culminated in O'Hare threatening the inspection supervisor. O'Hare emailed the inspection supervisor later that day offering to allow the inspection supervisor access to the wells the following Monday morning. However, he also wrote that, had the inspection supervisor attempted to enter the property in spite of the locked gates, he would have been at risk of being shot because the O'Hares' children had been instructed to shoot trespassers. O'Hare added:

> If your purpose is truly to inspect the locations for adherence to the COGCC rules and regulations then bring your notepad on Monday and you can write up all the deficiencies you find and we will address them to the best of our ability as soon as we can. If your intention is to run roughshod over our Constitutional rights then you should be prepared for a fight because I will defend my rights and my family to the death! Any questions?

¶ 10     COGCC then sought an administrative search warrant authorizing entry to and inspection of the western and eastern locations, which was granted by the La Plata County District Court. On March 27, 2014, the COGCC executed that warrant.

## B.  COGCC's Inspections and Order

¶ 11     During the initial March 27 inspection, COGCC staff noted several rules violations, including, as relevant here, improperly stored equipment at the Katie Eileen 2A well and unclosed pits at the Katie Eileen 2 and 3 wells, one of which contained improperly stored drill cuttings.[4]

¶ 12     About two weeks later, COGCC staff conducted a follow-up inspection of the wells.  That inspection revealed that the previously observed violations were ongoing.  Additionally, a COGCC environmental protection specialist collected soil samples from the pits adjacent to the Katie Eileen 2 and 3 wells.  Those soil samples showed levels of various contaminants that exceeded COGCC rules.

---

[4] Drill cuttings "are bits of rock and soil cut from subsurface formations by the drill bit during the process of drilling a well and then lifted to the surface by circulation of oil-based drilling fluids." *Osage Envtl., Inc. v. R.R. Comm'n,* No. 03-08-00005-CV, 2008 WL 2852295, at *1 n.2 (Tex. App. July 24, 2008) (unpublished opinion).

¶ 13    Based on the inspections of the Katie Eileen wells, COGCC issued Maralex multiple notices of alleged violations during June and August of 2014. Challenging these notices, Maralex requested an administrative hearing. COGCC held a hearing at which various COGCC and Maralex employees testified. Following the hearing, COGCC issued an OFV, concluding that Maralex had violated several rules, including, as relevant here, Rules 204, 603.f, 905(a), and 907(a)(1). *See* Dep't of Nat. Res. Rule 204, 2 Code Colo. Regs. 404-1; Dep't of Nat. Res. Rule 603.f, 2 Code Colo. Regs. 404-1; Dep't of Nat. Res. Rule 905(a), 2 Code Colo. Regs. 404-1; Dep't of Nat. Res. Rule 907(a)(1), 2 Code Colo. Regs. 404-1. In total, Maralex was assessed a penalty of $94,000 for the violations.

## C. The District Court's Order

¶ 14    Maralex and the O'Hares sought judicial review of COGCC's order. They raised constitutional challenges to COGCC's rule permitting warrantless inspections of oil and gas locations and sought injunctive and declaratory relief. The O'Hares (but not Maralex) raised a separate constitutional challenge to the inspection rule based on their status as surface owners. Maralex (but not the

6

O'Hares) also challenged COGCC's determination of rules violations in the OFV.

¶ 15    In a thorough and well-reasoned order, the district court denied Maralex and the O'Hares declaratory and injunctive relief, concluding that COGCC's inspection rule did not violate either the United States or Colorado Constitution.  Similarly, the district court concluded that the O'Hares' constitutional rights were not violated.  The district court also affirmed the OFV in full, finding that all the violations were supported by competent evidence in the agency's record.

## II.  Constitutionality of Rule 204

¶ 16    Maralex and the O'Hares argue that COGCC "lacks statutory authority" to conduct unannounced, warrantless searches of oil and gas locations.  Although they do not characterize it as such, we construe this claim as a facial challenge to the constitutionality of Rule 204, which permits authorized COGCC staff "the right at all reasonable times to go upon and inspect any oil or gas properties." Dep't of Nat. Res. Rule 204, 2 Code Colo. Regs. 404-1; *see City of Los Angeles v. Patel*, 576 U.S. ___, ___, 135 S. Ct. 2443, 2449 (2015) ("[F]acial challenges under the Fourth Amendment are not

categorically barred or especially disfavored."). We conclude that Rule 204 passes constitutional muster.

## A. Standard of Review

¶ 17    Because it is a question of law, we review the constitutionality of an agency rule de novo. *See Indep. Inst. v. Coffman*, 209 P.3d 1130, 1135 (Colo. App. 2008).

## B. Administrative Searches

¶ 18    The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Likewise, the Colorado Constitution prohibits "unreasonable searches and seizures." Colo. Const. art II, § 7. As a general rule, a warrantless search is presumptively unreasonable. *Patel*, 576 U.S. at ___, 135 S. Ct. at 2452. The Fourth Amendment's prohibition on unreasonable searches and seizures is applicable to commercial premises. *New York v. Burger*, 482 U.S. 691, 699 (1987).

¶ 19    However, the Supreme Court has carved out certain exceptions to the requirement that searches be conducted pursuant to a warrant issued upon probable cause. One such exception is in the context of administrative searches. *See Eddie's Leaf Spring*

8

*Shop & Towing LLC v. Colo. Pub. Utils. Comm'n*, 218 P.3d 326, 332 (Colo. 2009). Developed in two Supreme Court cases, *Colonnade Catering Corp. v. United States*, 397 U.S. 72 (1970), and *United States v. Biswell*, 406 U.S. 311 (1972), this exception has been referred to as the *Colonnade-Biswell* exception. *See, e.g., Exotic Coins, Inc. v. Beacom*, 699 P.2d 930, 942 (Colo. 1985).

¶ 20 Under this exception, "a warrantless inspection made pursuant to a regulatory scheme of a closely regulated industry is reasonable if three requirements are met." *Eddie's Leaf Spring Shop*, 218 P.3d at 332. First, the regulatory scheme must "be informed by a substantial government interest." *Id.* Second, warrantless searches must be necessary to further that government interest. *Id.* Third, the regulatory scheme must "provide a 'constitutionally adequate substitute' for a warrant in terms of the certainty and regularity of the program's application." *Id.* (quoting *Burger*, 482 U.S. at 700).

¶ 21 The *Colonnade-Biswell* exception is rooted in the principle that, because there is a reduced expectation of privacy on the part of an owner of commercial premises in a pervasively regulated industry, the traditional warrant and probable cause requirements

have lessened application. *See Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) ("[W]hen an entrepreneur embarks upon such a business, he has voluntarily chosen to subject himself to a full arsenal of governmental regulation.").

¶ 22　　The Supreme Court has stated that this exception to the warrant requirement is a narrow one. In a recent decision, the Court noted that it had applied the administrative search exception to only four closely regulated industries: "liquor sales, firearms dealing, mining, or running an automobile junkyard." *Patel*, 576 U.S. at ___, 135 S. Ct. at 2454 (citations omitted). In *Patel*, the Court held that the hotel industry was not "pervasively regulated" because it was subject only to "general regulations" like licensure, tax, rate postage, and sanitary requirements. *Id.* at ___, 135 S. Ct. at 2455 (noting that such regulations "hardly . . . put[] hotel owners on notice that their 'property will be subject to periodic inspections undertaken for specific purposes'" (quoting *Burger*, 482 U.S. at 705 n.16)).

¶ 23　　Despite the Court's admonition that the closely regulated industry "is the exception," *Marshall*, 436 U.S. at 313, other courts have found that many and varied industries fall within that

exception.  *See Eddie's Leaf Spring Shop*, 218 P.3d at 333
(nonconsensual towing); *Gora v. City of Ferndale*, 576 N.W.2d 141,
147 (Mich. 1998) (massage parlors); *State v. Klager*, 797 N.W.2d 47,
53 (S.D. 2011) (taxidermy); *Hill v. Commonwealth*, 624 S.E.2d 666,
671-72 (Va. Ct. App. 2006) (food production).

## C.  Analysis

¶ 24     Maralex and the O'Hares contend that COGCC lacks authority to conduct unannounced, warrantless searches of oil and gas locations.  While they opaquely reference the analysis set forth in Supreme Court and Colorado cases discussing administrative searches, neither their opening brief nor their reply brief addresses COGCC's contention that the *Colonnade-Biswell* exception applies here.  We conclude that COGCC's inspection scheme, as codified in Rule 204, does not violate the United States or Colorado Constitution.

¶ 25     We first address whether the oil and gas industry is "closely regulated."  *Eddie's Leaf Spring Shop*, 218 P.3d at 332.  "The key factors in determining whether an industry is closely regulated are the pervasiveness and regularity of the regulation and the effect of such regulation upon an owner's expectation of privacy."  *Id.*

¶ 26    We conclude that the oil and gas industry is closely regulated. The Oil and Gas Conservation Act (Act), §§ 34-60-101 to -130, C.R.S. 2017, provides COGCC with substantial authority to regulate oil and gas facilities. *See generally Chase v. Colo. Oil & Gas Conservation Comm'n*, 2012 COA 94M, ¶¶ 24-29, 284 P.3d 161, 165-67 (detailing COGCC's history and authorizing legislation). Indeed, COGCC is empowered to "do whatever may reasonably be necessary to carry out the provisions of th[e Act]." § 34-60-105(1), C.R.S. 2017. To that end, COGCC has promulgated comprehensive rules regulating multitudinous aspects of the oil and gas industry. *See City of Fort Collins v. Colo. Oil & Gas Ass'n*, 2016 CO 28, ¶ 29, 369 P.3d 568, 593 (characterizing COGCC's rules as "exhaustive" and "comprehensive[]"); *City of Longmont v. Colo. Oil & Gas Ass'n*, 2016 CO 29, ¶ 52, 369 P.3d 573, 584 (same). The inevitable effect of this exhaustive regulatory scheme is a lessened expectation of privacy in commercial premises for operators in Colorado's oil and gas industry. *See Eddie's Leaf Spring Shop*, 218 P.3d at 332-33.

¶ 27    Moreover, courts in other jurisdictions have concluded that the oil and gas industry is closely regulated. *See United States v. Stinson*, No. 1:12CR-00012-JHM, 2013 WL 1221937, at *3 (W.D.

Ky. Mar. 25, 2013) (unpublished opinion) (oil and gas industry is "highly regulated"); *Matter of Mullins & Pritchard, Inc.*, 549 So. 2d 872, 876-77 (La. Ct. App. 1989) ("[I]t is obvious that the oil and gas production facilities subject to the warrantless searches fall under the 'pervasively regulated industry' exception to the warrant requirement."). We similarly conclude that the comprehensive scheme governing oil and gas operations in Colorado renders the industry closely regulated.

¶ 28     Next, we consider whether the three additional criteria necessary to make warrantless inspections reasonable are satisfied. First, we must determine whether the state has a substantial interest in regulating oil and gas operations. We conclude that it does.

¶ 29     According to the Act's legislative declaration, it is "in the public interest" to "[f]oster the responsible, balanced development, production, and utilization of the natural resources of oil and gas in the state of Colorado in a manner consistent with protection of public health, safety, and welfare, including protection of the environment and wildlife resources." § 34-60-102(1)(a)(I), C.R.S. 2017. The Act "and the Commission's pervasive rules and

regulations . . . convince us that the state's interest in the efficient and responsible development of oil and gas resources includes a strong interest in the uniform regulation" of oil and gas operations. *City of Fort Collins*, ¶ 29, 369 P.3d at 593.

¶ 30    Second, we consider whether warrantless searches are necessary to further the state's substantial interest in the safe and efficient operation of oil and gas facilities.  We conclude that they are.  Imposing a warrant (and, as a result, probable cause) requirement would frustrate COGCC's ability to effectively enforce the Act by inspecting between 19,000 and 23,500 oil and gas facilities each year.  *See* Oil & Gas Conservation Commission, Field Inspection Unit 1, https://perma.cc/9VR8-G59G.  Requiring that inspectors apply to a court for a warrant before each inspection would dramatically reduce COGCC's enforcement power, and might allow operators to conceal violations.  *Cf. Donovan v. Dewey*, 452 U.S. 594, 603 (1981) (noting, in the context of the mining industry, the "notorious ease with which many safety or health hazards may be concealed if advance warning of inspection is obtained" (quoting S. Rep. No. 95-181, at 27 (1977))).

¶ 31    To the extent Maralex and the O'Hares argue that the legislature must affirmatively declare that warrantless inspections are necessary to further a given agency's regulatory interest, we find no authority for such a conclusion.  In contrast, as COGCC points out, this position has been expressly rejected by other courts.  *See, e.g.*, *Balelo v. Baldrige*, 724 F.2d 753, 765 (9th Cir. 1984) (referring to a similar argument as a "novel constitutional proposition" and determining that "[t]he law is to the contrary").  Moreover, a 2013 amendment to the Act instructed COGCC to begin conducting inspections pursuant to a "risk-based strategy" targeting "the operational phases that are most likely to experience spills, excess emissions, and other types of violations and that prioritizes more in-depth inspections."  § 34-60-106(15.5), (15.5)(b), C.R.S. 2017.  That amendment was enacted prior to the inspections of the Katie Eileen wells here.  In enacting that amendment, the legislature could have, but did not, impose any warrant requirement for COGCC inspections.  In fact, the legislature specifically stated that the purpose of the legislative amendment was "to increase the frequency of inspections of oil and gas wells."  S. 13-202, 69th Gen. Assemb. § 1(c) (Colo. 2013).

¶ 32     Last, we consider whether the occurrence of warrantless COGCC inspections was "so random, infrequent, or unpredictable that the owner, for all practical purposes, has no real expectation that his property will from time to time be inspected by government officials." *Donovan*, 452 U.S. at 599.  In this case, neither party describes the frequency with which COGCC typically inspects any given location.  However, a COGCC document states that "[o]n average, active wells are inspected once every 2.4 years."  *See* Field Inspection Unit at 1.  Maralex and the O'Hares concede that the Katie Eileen 2 and 3 wells had been inspected four times between July 2000 and June 2006.

¶ 33     Further, as Maralex and the O'Hares acknowledge, Rule 204 imposes a reasonableness requirement that circumscribes COGCC's authority to conduct random inspections.  We therefore conclude that COGCC's inspection regime "provid[es] a constitutionally adequate substitute for a warrant." *Burger*, 482 U.S. at 703 (quoting *Donovan*, 452 U.S. at 603).

¶ 34     Because Rule 204 meets the *Colonnade-Biswell* criteria, we conclude that warrantless inspections made pursuant to the rule do not violate the Fourth Amendment.[5]

¶ 35     We reach the same outcome under the Colorado Constitution. Although article 2, section 7 of the Colorado Constitution has in some contexts been interpreted as providing broader privacy protections than its federal counterpart, Maralex and the O'Hares have not argued that any distinction between the two provisions is significant here.  *Cf. Eddie's Leaf Spring Shop*, 218 P.3d at 334. "Additionally, our precedent provides no basis to distinguish between the rights under the [United States] and the Colorado Constitutions with regard to administrative searches."  *Id.*

---

[5] Maralex and the O'Hares pointed us to separate litigation also concerning the Katie Eileen wells.  Considering a challenge to the Bureau of Land Management's (BLM's) inspection scheme, a federal district court concluded that the BLM had statutory authority to conduct unannounced, warrantless searches under the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701 (2012). *Maralex Res., Inc. v. Jewell*, No. 15-cv-01893-CMA, 2017 WL 6033694 (D. Colo. Oct. 19, 2017) (unpublished opinion) (order affirming agency determination).

¶ 36    In sum, we conclude that Rule 204 does not run afoul of the United States or Colorado Constitution. The facial challenge to the inspection rule therefore fails.

### III. Other Constitutional Claims

¶ 37    The O'Hares also raise constitutional challenges to Rule 204 in their capacity as surface owners of land including oil and gas locations subject to COGCC oversight.

¶ 38    First, the O'Hares contend that Rule 204 is unconstitutional as applied to surface owners because, unlike the operators of oil and gas locations, they maintain an expectation of privacy in the property searched. However, in this case, the O'Hares granted Maralex an extraordinarily broad set of rights under the surface agreement. Specifically, the O'Hares gave Maralex "the right to do whatever they want on [their] property." Under these circumstances, the O'Hares substantially lessened any objective expectation of privacy by granting the corporation an unlimited easement on the surface estate. Because we have already concluded that Rule 204 permitted COGCC's inspection of Maralex's operations, the O'Hares' derivative claim must fail. We agree with the district court that, "[b]ecause Maralex has an

18

obligation to comply with [COGCC] orders, rules, and policies, the O'Hares do not have an expectation of privacy in property over which they willingly transferred access and control rights to Maralex."

¶ 39　　To the extent that the O'Hares challenge the application of Rule 204 to all surface owners, we must reject that facial challenge. We conclude that, in other cases where a surface owner has granted a mineral lessee a broad surface easement, warrantless entry of the surface estate would not necessarily violate the surface owner's rights. *See City & Cty. of Denver v. Casados*, 862 P.2d 908, 913 (Colo. 1993) (stating that a facial challenge is "the most difficult challenge to mount successfully, since the challenge must establish that no set of circumstances exists under which the [rule] would be valid").

¶ 40　　The O'Hares also purport to raise a takings claim under the Fifth Amendment. U.S. Const. amend. V ("[N]or shall private property be taken for public use, without just compensation."). As they did in the district court, the O'Hares argue with extremely broad strokes that Rule 204 interferes with their property rights to such a degree as to constitute an uncompensated government

taking.  Because this claim is set forth in a perfunctory manner, we decline to address it.  *See People v. Mershon*, 874 P.2d 1025, 1034 n.13 (Colo. 1994) (declining to address constitutional arguments that were only raised in a cursory fashion before the trial court); *see also Wagner v. Georgetown Univ. Med. Ctr.*, 768 A.2d 546, 554 n.9 (D.C. 2001) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (quoting *United States v. Zannino*, 895 F.2d 1, 16 (1st Cir. 1990))).

## IV.  COGCC's Order

¶ 41  Maralex also challenges the COGCC's order concluding that it violated multiple rules in relation to the Katie Eileen wells.  We reject its contentions, with one minor exception.

¶ 42  COGCC final orders are subject to judicial review in accordance with the State Administrative Procedure Act.  § 34-60-111, C.R.S. 2017 (citing § 24-4-106, C.R.S. 2017).  A "reviewing court may overturn an administrative agency's determination only if the court finds the agency acted in an arbitrary and capricious manner, made a determination that is unsupported by the record, erroneously interpreted the law, or exceeded its constitutional or

statutory authority." *Sapp v. El Paso Cty. Dep't of Human Servs.*, 181 P.3d 1179, 1182 (Colo. App. 2008) (citing § 24-4-106(7)). We defer to an agency's findings of fact unless they are "unsupported by substantial evidence when the record is considered as a whole." § 24-4-106(7).

¶ 43    We address each violation in turn.

## A. Rule 204

¶ 44    In its OFV, COGCC concluded that Maralex had violated Rule 204 by denying the inspectors access for a period of seven days starting on March 20, 2014, the day the inspection supervisor first contacted Maralex. Maralex contends that COGCC erred for two reasons. First, it asserts no Rule 204 violation occurred on March 20 because the inspection supervisor agreed to postpone the inspection until the next day after he was informed that O'Hare was unavailable. Second, Maralex contends there was no Rule 204 violation from March 21 through March 27 because nothing effectively prevented COGCC staff from entering the property during that period.

¶ 45    We agree with the first of Maralex's contentions. We conclude that COGCC's finding that Maralex violated Rule 204 on March 20

was arbitrary and capricious. The undisputed facts in the record reflect that the inspection supervisor first contacted Maralex in the afternoon of March 20, and did not actually speak to an employee until nearly 4:00 p.m. that day. The inspection supervisor agreed to delay the inspection until the next day. Accordingly, we conclude there was not substantial evidence to support COGCC's determination that Maralex failed to provide access to its wells at "all reasonable times." *See* Dep't of Nat. Res. Rule 204, 2 Code Colo. Regs. 404-1. Thus, we reverse the district court's order affirming that part of the OFV concluding Maralex violated Rule 204 on March 20, 2014. Accordingly, we also reverse the penalty assessed for the March 20 Rule 204 violations, which amounted to $2000.

¶ 46 However, we perceive no basis for disturbing COGCC's conclusion that Maralex "effectively denied staff access through threats to staff's safety" between March 21 — when O'Hare emailed the inspection supervisor stating that he had instructed his family to shoot trespassers — and March 27, when COGCC staff executed the search warrant. As COGCC noted in the OFV, the inspection supervisor testified that he was "quite terrified for his safety" and

felt threatened by O'Hare's email and phone call. This evidence supports COGCC's determination that Maralex violated Rule 204 for the duration of that six-day period.

¶ 47    Maralex attempts to minimize the impact of O'Hare's email by characterizing it as stating "what any reasonable person should know — do not jump a locked gate and traverse across a private ranch in a rural area because you might be mistaken as a trespasser and if you are deemed a threat, you might get shot." While O'Hare apparently believed he could legally shoot a person merely for entering his property without permission, his position is not supported by Colorado law.[6]

¶ 48    Thus, we affirm the district court's enforcement of that part of the OFV concluding Maralex violated Rule 204 from March 21 through March 27, 2014, including its imposition of $12,000 in fines for that period.

---

[6] Colorado statutes provide that a person may lawfully use physical force against another person in certain limited circumstances. *See* §§ 18-1-703 to -706, C.R.S. 2017. Further, a person may lawfully use deadly physical force against another person in limited circumstances. *See* § 18-1-704(2), C.R.S. 2017; § 18-1-704.5(2), C.R.S. 2017. However, nothing in those provisions authorizing use of physical force would have permitted O'Hare to legally shoot trespassers merely for entering his property without his permission.

## B. Rule 603.f

¶ 49    Rule 603.f requires that oil and gas locations "be kept free of . . . [unnecessary] equipment, vehicles, and supplies" and "rubbish, and other waste material." Dep't of Nat. Res. Rule 603.f, 2 Code Colo. Regs. 404-1. The rule applies to "[a]ll locations, including wells." *Id.* COGCC concluded that Maralex had violated Rule 603.f at both Katie Eileen locations based on its finding that there was unnecessary equipment and debris at the locations. Maralex appeals only the violation arising from equipment and debris at the Katie Eileen 2A location.

¶ 50    Maralex argues, as it did before COGCC and in the district court, that the surface owners — the O'Hares — had reclaimed use of the relevant land and thus the area no longer constituted an "oil and gas location" within COGCC's jurisdiction. Because the O'Hares had "exclusive possession and control" of the property, Maralex argues that it did not violate Rule 603.f.

¶ 51    We reject this argument. Referring to its definition of "oil and gas location" in Rule 100, COGCC determined that the location fell within its jurisdiction. Our review of the record leads us to the same result. *See Colo. Citizens for Ethics in Gov't v. Comm. for Am.*

24

*Dream*, 187 P.3d 1207, 1219 (Colo. App. 2008) ("An agency's determination of its own jurisdiction is reviewed de novo."). The area on which the equipment and debris were observed is a "definable area where an operator has disturbed . . . the land surface in order to locate an oil and gas facility" — namely, the Katie Eileen 2A well. *See* Dep't of Nat. Res. Rule 100, 2 Code Colo. Regs. 404-1. Especially in this context, where the O'Hares as surface owners granted Maralex an unchecked right of access to the surface estate, we conclude that Maralex violated Rule 603.f by failing to remove unnecessary equipment and debris from the area near the well.

¶ 52    Alternatively, Maralex asserts that the equipment belonged to O'Hare alone, and thus Maralex could not have violated the rule. However, as COGCC found, O'Hare's testimony significantly undermined that argument. O'Hare contradictorily testified that he had purchased the equipment and that Maralex owned the equipment. As a result, COGCC found O'Hare not to be credible on this matter, and we defer to that finding. Similarly, we defer to COGCC's finding that the equipment was Maralex's.

¶ 53     Accordingly, we affirm COGCC's determination that Maralex violated Rule 603.f at the Katie Eileen 2A location.

## C.  Rule 905(a)

¶ 54     Rule 905(a) states that "[d]rilling pits shall be closed in accordance with the 1000-Series Rules."  Dep't of Nat. Res. Rule 905(a), 2 Code Colo. Regs. 404-1.  The "1000-Series Rules" "establish the proper reclamation of the land and soil affected by oil and gas operations."  Dep't of Nat. Res. Rule 1001(a), 2 Code Colo. Regs. 404-1.  Accordingly, Rule 1003(d)(2) requires that, on non-crop land (such as the O'Hares' ranch), drilling pits be closed no later than six months after "drilling and completion activities conclude."  Dep't of Nat. Res. Rule 1003(d)(2), 2 Code Colo. Regs. 404-1.

¶ 55     Rule 1001(c) states that COGCC will not require compliance with Rule 1003

> if the operator can demonstrate to the Director's or [COGCC's] satisfaction both that compliance with such rule[] is not necessary to protect the public health, safety and welfare . . . and that the operator has entered into an agreement with the surface owner regarding topsoil protection and reclamation of the land.

Dep't of Nat. Res. Rule 1001(c), 2 Code Colo. Regs. 404-1. Rule 1001(c) then states that, "[a]bsent bad faith conduct by the operator, penalties may only be imposed for non-compliance with a [COGCC] order issued after a determination that, notwithstanding such agreement, compliance is necessary to protect public health, safety and welfare." *Id.*

¶ 56 COGCC concluded that Maralex had violated Rule 905(a) on the basis of the two open drilling pits on the Katie Eileen 2 and 3 location. Maralex contends that it had waived the requirement that the pits be closed within six months of the completion of the drilling operations by converting the pits into stock ponds. Further, Maralex contends that the second sentence of Rule 1001(c) "precludes any fine being levied against [it] for failing to reclaim the stock ponds" because COGCC never determined that compliance with Rule 1003 was necessary to protect public health, safety, and welfare.

¶ 57 COGCC rejected Maralex's interpretation of Rule 1001(c), stating that, in order to waive the closure requirements, the surface owner must get COGCC approval for delaying closure or reclamation. It was undisputed that COGCC had not granted

27

Maralex a waiver or variance approving the use of the open pits as stock ponds.

¶ 58     An agency's interpretation of its own rule is entitled to great deference.  *Abromeit v. Denver Career Serv. Bd.*, 140 P.3d 44, 49 (Colo. App. 2005).  Thus, we will accept COGCC's interpretation if it has a reasonable basis in law and is warranted by the record.  *See Bd. of Cty. Comm'rs v. Colo. Oil & Gas Conservation Comm'n*, 81 P.3d 1119, 1125 (Colo. App. 2003).  Here, we accept COGCC's interpretation of Rule 1001(c) as imposing a requirement that an operator affirmatively seek a waiver before being able to invoke the protection of the rule's second sentence.

¶ 59     Accordingly, we conclude there is no basis for reversing COGCC's determination that Maralex violated Rule 905(a).

### D.  Rule 907(a)(1)

¶ 60     COGCC has defined exploration and production waste as "wastes associated with operations to locate or remove oil or gas from the ground."  Dep't of Nat. Res. Rule 100, 2 Code Colo. Regs. 404-1.  Rule 907(a) generally requires that operators properly store, handle, or dispose of exploration and production waste.  Dep't of Nat. Res. Rule 907(a), 2 Code Colo. Regs. 404-1.  The rule also

refers to a table, Table 910-1, setting forth acceptable concentration levels of various contaminants. *Id.* Operators must manage exploration and production waste "to the extent necessary to ensure compliance" with Table 910-1. *Id.*

¶ 61 COGCC concluded that Maralex violated Rule 907(a)(1) at the Katie Eileen 2 and 3 location based on exploration and production waste observed in the pit with the partially torn liner. According to the OFV, the violation was based only on the presence of "weathered drill cuttings" in the pit, which were visible due to the contrast in color between the cuttings and the native soil.

¶ 62 At the agency's hearing, COGCC's environmental protection specialist also testified that, based on soil samples he had taken from the edge of the pit, the soil exceeded the permissible levels of electrical conductivity, sodium absorption, and arsenic. However, the environmental protection specialist did not take background samples that would show that the elevated levels were unique to the area around the pit and not merely common to the nearby soil.

¶ 63 Maralex contends that COGCC staff erred in failing to take background soil samples. We conclude that Maralex's reliance on the footnote in Table 910-01 is misplaced. While that footnote

states that "[c]onsideration shall be given to background [contaminant] levels in native soils," Dep't of Nat. Res. Table 910-1 n.1, 2 Code Colo. Regs. 404-1, nothing in COGCC's rules mandates that an inspector take background soils samples.

¶ 64 Regardless, COGCC's conclusion with regard to Rule 907(a)(1) was based only on the inspectors' testimony and photographs demonstrating that there were drill cuttings in the pit with the torn liner. Specifically, the OFV read, "[COGCC] finds Maralex in violation of Rule 907.a(1) at the Katie Eileen 2 [and] 3 Location, because drill cuttings were not properly treated or stored in the pit with the torn liner." Because that finding is supported by substantial evidence, we perceive no basis for reversing the agency's decision that Maralex violated Rule 907(a)(1).

## V. Conclusion

¶ 65 Accordingly, the district court's order enforcing COGCC's OFV is reversed insofar as it upheld the agency's determination that Maralex violated Rule 204 on March 20, 2014, and assessed a $2000 penalty for that violation. In all other respects, the district court's order is affirmed. We remand to the district court to return

the case to COGCC for further proceedings consistent with this opinion.

JUDGE BOORAS and JUDGE CASEBOLT concur.